UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHN KARLYG,

                Plaintiff,

          - against -

JEFFRIE MERINO, LT.; PHILLIP WHITE;
ROSIANA HINDS; JOHN DOE(S); and
CITY OF NEW YORK,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-991 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

       One morning in July 2019, three officers of the New York Taxi and Limousine Commission ("TLC"), Jeffrie Merino, Phillip White, and Rosiana Hinds (collectively "Defendants"), participated in the arrest of Plaintiff John Karlyg, a driver for Lyft, Inc. ("Lyft"), at LaGuardia Airport in Queens County, New York. Plaintiff was charged with having a cover over his license plate in violation of New York Vehicle and Traffic Law § 402-1(v). He was detained until his arraignment that night, when he accepted an adjournment in contemplation of dismissal ("ACD"). Defendants also issued summonses to Plaintiff for violating TLC Administrative Code Rules 80-12(d) and 80-13(a)(2), which required Plaintiff to subsequently appear at a hearing before the TLC Office of Administrative Trials and Hearings. At the hearing, the TLC dismissed the charges on the merits.

       On February 24, 2020, Plaintiff sued Defendants under New York law and 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss Plaintiff's Section 1983 claims for malicious prosecution and fabrication of evidence, as well as his state-law claims for malicious prosecution, negligence, and invasion of privacy/trespass to person. (Dkt. 24.) The Court grants Defendants' motion as to Plaintiff's malicious prosecution claims, but otherwise denies it.

1

# BACKGROUND

## I.    Factual Background

The Amended Complaint alleges the following facts, which the Court accepts as true for purposes of this motion.  *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

### A.  Plaintiff's Arrest

Plaintiff is a resident of Queens, New York.  (Amended Complaint ("Am. Compl."), Dkt. 19, ¶ 4.)  Around July 9, 2019, Plaintiff was working as a driver for Lyft.  (*Id.* ¶ 12.)  Shortly after 7:00 a.m. that day, he was waiting for a passenger named "Gary" at LaGuardia Airport in Queens.  (*Id.* ¶¶ 13–14.)  A man approached his car with luggage and said "JFK, JFK."  (*Id.* ¶ 14)[1]  Plaintiff told the man that he was waiting for a passenger and could not take him to JFK.  (*Id.* ¶ 15.)  The man told Plaintiff to "get the fuck out of here."  (*Id.*)  Plaintiff responded something to the effect of, "[Y]ou get the fuck out of here.  I am waiting for my passenger."  (*Id.* ¶ 16.)

The man walked over to three nearby TLC officers, Merino, White, and Hinds, and conversed with them.  (*Id.* ¶ 17.)  Defendant White approached Plaintiff's car and "requested his documents."  (*Id.*)  Defendant White did not "indicate that he was a law enforcement officer."  (*Id.* ¶ 18.)  Plaintiff gave Defendant White his driver's license and TLC licenses.  (*Id.*)

Plaintiff's passenger arrived, and Defendant White told him to get out of the car because Plaintiff was "not going anywhere."  (*Id.* ¶ 19.)  Defendant White told Plaintiff, "'I'm gonna throw your white ass in jail[,]' and that he was going to send [P]laintiff back to where he came from."  (*Id.* ¶ 20.)

---

[1] The Amended Complaint lists this person as a John Doe Defendant and alleges he "was acting as an undercover TLC officer."  (Am Compl., Dkt. 19, ¶ 35.)

Defendants White and Merino pulled Plaintiff's arms behind him and "forcefully handcuffed him," causing "extreme pain and injury to [P]laintiff's shoulder." (*Id.* ¶ 21.) They then shoved Plaintiff into a car, causing his head to hit the vehicle. (*Id.* ¶ 22.) In the car, Plaintiff complained about the tightness of the handcuffs, but Defendants White and Merino ignored him. (*Id.* ¶ 23.)

Defendants took Plaintiff to a police station in LaGuardia Airport. (*Id.* ¶ 24.) A Port Authority officer saw that Plaintiff "was suffering from pain and discomfort[,] and an ambulance was requested to take [P]laintiff to a hospital for medical treatment." (*Id.*) At the hospital, Plaintiff "heard [Defendants White and Merino] laughing about the fact that they would be getting overtime due to [his] arrest." (*Id.* ¶ 25.) Defendants did not tell Plaintiff what the charges against him were, or why they had arrested him. (*Id.* ¶ 28.)

### B. Post-Arrest Proceedings

After Plaintiff received unspecified treatment at the hospital, "he was taken to Queens Central Booking and detained until he saw a judge sometime late at night." (*Id.* ¶ 26.) Plaintiff's appointed lawyer told him "that he had been arrested for having a cover over his license plate, although [P]laintiff had no [such] cover." (*Id.* ¶ 27.) Defendant Merino alleged in the criminal complaint that he saw "a padded covering placed over the front license plate of [P]laintiff's vehicle, and that he was informed by [Defendant White] that he observed the rear license plate of [P]laintiff's vehicle to be covered with a plastic covering in violation of New York Vehicle and Traffic Law §402-1(v)." (*Id.* ¶ 29.) Plaintiff was arraigned in Queens County Criminal Court, and accepted an ACD under New York Criminal Procedure Law § 170.55. (*Id.* ¶ 31.)

Defendants also issued summonses to Plaintiff for violations of TLC Administrative Code Rules 80-12(d) and 80-13(a)(2), which required Plaintiff to attend a hearing before the TLC on August 23, 2019. (*Id.* ¶ 32.) At the hearing, the TLC Office of Administrative Trials and Hearings

reviewed evidence including photos of Plaintiff's license plates.  (*Id.* ¶ 33.)  It dismissed the TLC

Code charges against Plaintiff.  (*Id.*)

## II.     Procedural Background

On February 24, 2020, Plaintiff sued Defendants.  (*See generally* Dkt. 1.)  The Court held

a pre-motion conference on July 8, 2020 (*see* 7/8/2020 Minute Entry), after which Plaintiff filed

an Amended Complaint (Am. Compl., Dkt. 19).  In it, Plaintiff alleged eleven substantive claims:[2]

- False arrest under Section 1983 (*id.* ¶¶ 36–40);

- False arrest under New York law (*id.* ¶¶ 41–44);

- Excessive use of force under Section 1983 (*id.* ¶¶ 45–50);

- Assault and battery under New York law (*id.* ¶¶ 51–56);

- Negligence under New York law (*id.* ¶¶ 57–60);

- Fabrication of evidence under Section 1983 (*id.* ¶¶ 61–64);

- Malicious prosecution under Section 1983 (*id.* ¶¶ 65–69);

- Malicious prosecution under New York law (*id.* ¶¶ 70–75);

- Invasion of privacy and trespass under New York law (*id.* ¶¶ 76–78);

- Equal protection violations under Section 1983 (*id.* ¶¶ 79–81); and

- Failure to intervene under Section 1983 (*id.* ¶¶ 82–84).

On October 16, 2020, Defendants moved to dismiss various claims in the Amended

Complaint under Federal Rule of Civil Procedure 12(b)(6).  (*See generally* Memorandum of Law

in Support of Defendants' Motion to Dismiss ("Defs.' Mot."), Dkt. 24-2.)  They ask the Court to

dismiss (1) Plaintiff's malicious prosecution claims for failure to adequately plead the elements

---

[2] Plaintiff also listed a twelfth Claim for Vicarious Liability (Am. Compl., Dkt. 19, ¶¶ 85–87), and a thirteenth claim for "Violation of 42 U.S.C. § 1983" (*id.* ¶ 88–93).

(*see* Defs.' Mot., Dkt. 24-2, at ECF[3] 13–16), (2) Plaintiff's fabrication of evidence claim for failure

to plead a favorable termination and that he suffered a post-arraignment deprivation of liberty (*see*

*id.* at ECF 16–17), (3) Plaintiff's state law negligence and invasion of privacy/trespass claims for

failure to file a proper Notice of Claim under N.Y. Gen. Mun. Law § 50-E (*see id.* at 11), and (4)

Plaintiff's negligence claim as improper (*see id.* at ECF 18).  Defendants' motion was fully briefed

on October 16, 2020.  (*See* Plaintiff's Response in Opposition to Defendants' motion to dismiss

("Pl.'s Resp."), Dkt. 27; Defendants' Reply ("Defs.' Reply"), Dkt. 25.)

## DISCUSSION

### I.    Legal Standards

#### A.  Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  A "claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully."  *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at

679 (citation omitted).  "In addressing the sufficiency of a complaint[,] [the Court] accept[s] as

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing
system and not the document's internal pagination.

true all factual allegations and draw[s] from them all reasonable inferences; but [the Court] [is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citing *Twombly*, 550 U.S. at 555, 557).

### B.  42 U.S.C. § 1983

Section "1983 does not confer any substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Village of Freeport v. Barrella*, 814 F.3d 594, 600 n.8 (2d Cir. 2016) (citation and quotations omitted).  "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted).

## II.    Analysis

### A.  Malicious Prosecution

Defendants move to dismiss Plaintiff's malicious prosecution claims under New York law and Section 1983 on the grounds that those claims do not rely on a criminal prosecution, and Plaintiff has not alleged a deprivation of liberty.  (Dkt. 24-2, at 7–10.)

#### 1.  Legal Standard

Under New York law, a plaintiff alleging malicious prosecution must show that "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in [the] plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (citation and alterations omitted).

Although a "judicial proceeding is the Sine qua non of a cause of action in malicious prosecution," *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975), "[a] claim for malicious prosecution may also lie when an administrative proceeding is commenced which contains

sufficient attributes of a judicial proceeding," *Scollar v. City of New York*, 74 N.Y.S.3d 173, 180 n.9 (N.Y. App. Div. 2018) (citations omitted).   "[A]dministrative proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination, have sufficient attributes of judicial proceedings to be considered judicial proceedings for the purposes of a cause of action for malicious prosecution." *Groat v. Town Bd. of Town of Glenville*, 426 N.Y.S.2d 339, 341 (N.Y. App. Div. 1980) (holding that an administrative proceeding against a police officer by the Town Board, which involved a hearing and trial, was a sufficiently judicial proceeding for purposes of a malicious prosecution action).[4]

---

[4] *Compare Nazario v. State*, 884 N.Y.S.2d 580, 590 (N.Y. Ct. Cl. 2009) (finding that a parole revocation hearing contained "sufficient attributes of a judicial proceeding to support a cause of action for malicious prosecution" because it involved "representation by counsel, the right to confront witnesses and [] present witnesses and documentary evidence both in defense of the charges and on the issue of whether reincarceration [wa]s appropriate," and "[t]he presiding officer at the hearing [could] sustain the charge only if it [wa]s supported by a preponderance of the evidence adduced" (citations and quotations omitted)), *aff'd*, 905 N.Y.S.2d 328 (N.Y. App. Div. 2010); *Glenn v. State of New York*, 543 N.Y.S.2d 632, 634 (N.Y. Ct. Cl. 1989) (finding the administrative adjudication of the plaintiff's traffic violations "sufficiently judicial and burdensome in nature to satisfy . . . [a] malicious prosecution [claim]" because he "was forced to appear at no [fewer] than five administrative trials"; "[i]f he had not appeared it could have resulted in his arrest and imprisonment"; "evidence was required to be submitted, including testimony under oath with a right of cross-examination"; and his license "was necessary in order to maintain his means of livelihood" (citations omitted)); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 528–29 (S.D.N.Y. 2013) (finding that school suspension "procedures [we]re sufficiently trial-like on their face to support a claim for malicious prosecution" at the Rule 12(b)(6) stage because "[t]he procedures for such a suspension include[d] notice, the right to present witnesses and to cross-examine the witnesses for the school," and "findings by the hearing officer"); *with Tray Wrap, Inc. v. Pacific Tomato Growers Ltd.*, No. 26782-2003, 2008 WL 9453492, at *20 (N.Y. Sup. Ct. Feb. 6, 2008) (finding that a proceeding before the Secretary of Agriculture was not sufficiently judicial because it "was decided solely on the submission of papers and documents, [] no testimony was taken[,] and [] no witnesses were examined"); *Treacy v. State of New York*, 501 N.Y.S.2d 1005, 1006 (N.Y. Ct. Cl. 1986) (dismissing a malicious prosecution claim where "[t]he only requirements of [the administrative] proceeding [were] that the [plaintiff] be (1) apprised of the charges against him . . . , (2) accorded an opportunity to respond to said charges, and (3) "given a written statement from the factfinders of the evidence relied on and the reasons for the action taken," but where "[t]he right to confrontation and assistance of counsel [were] not required" (citation omitted)).

"[C]laims for malicious prosecution under § 1983 are substantially the same as claims for malicious prosecution under state law," except that a Section 1983 claimant must further "show a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24–25 (2d Cir. 2018) (citations, quotations, and alteration omitted). "[T]o prevail on a § 1983 claim against a state actor for malicious prosecution, [therefore,] a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).[5]

Although Second Circuit "case law does not forbid a § 1983 malicious prosecution claim premised on a civil or administrative proceeding," such claims still must "be premised on a violation of Fourth Amendment rights." *Washington v. City of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004). "Accordingly, a plaintiff asserting such a claim must show some deprivation of liberty consistent with the concept of seizure." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (citation and citation omitted).

"Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest . . . , while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (citations omitted). To plead malicious prosecution, therefore, a plaintiff must "allege a post-arraignment deprivation of liberty." *Arbuckle v. City of New York*, No. 14-CV-10248 (ER), 2016 WL 5793741, at *10 (S.D.N.Y. Sept. 30, 2016).

---

[5] Because "federal law defines the elements of a § 1983 malicious prosecution claim, . . . a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning*, 908 F.3d at 25. By contrast, "for malicious prosecution claims brought under New York law, federal courts must faithfully apply New York tort law." *Id.* at 28 (citations omitted).

"[W]here a plaintiff is charged in an administrative proceeding, but never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment, there is no deprivation of liberty constituting a Fourth Amendment violation." *Est. of Keenan v. Hoffman-Rosenfeld*, No. 16-CV-0149 (SFJ) (AYS), 2019 WL 3416374, at *8 (E.D.N.Y. July 29, 2019) (citation and quotations omitted), *aff'd*, 833 F. App'x 489 (2d Cir. 2020). "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg*, 591 F.3d at 98.

    2.  <u>Plaintiff's Malicious Prosecution Claims Fail for Lack of a Judicial Proceeding or Deprivation of Liberty</u>

The Amended Complaint alleges malicious prosecution on the ground that Defendants "instituted administrative proceedings against [P]laintiff before the [TLC] Office of Administrative Trials and Hearings[,] and [P]laintiff was forced to submit to such proceedings." (Am. Compl., Dkt. 19, ¶ 66.)  Taking the facts in the Amended Complaint as true, this allegation is insufficient under both state law and Section 1983.

First, Plaintiff's state law malicious prosecution claim fails to allege the TLC hearing "contain[ed] sufficient attributes of a judicial proceeding." *Scollar*, 74 N.Y.S.3d at 180 n.9.  As noted, "administrative proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination, have sufficient attributes of judicial proceedings to be considered judicial proceedings for the purposes of a cause of action for malicious prosecution." *Groat*, 426 N.Y.S.2d at 341.  By contrast, an administrative proceeding cannot give rise to a malicious prosecution claim if it "was decided solely on the submission of papers and documents, [] no testimony was taken[,] and [] no witnesses were examined," *Tray Wrap, Inc. v. Pacific Tomato Growers Ltd.*, No. 26782-2003, 2008 WL 9453492, at *20 (N.Y.

Sup. Ct. Feb. 06, 2008), or when the "only requirements of [the administrative] proceeding [we]re that the [plaintiff] be" (1) "apprised of the charges against him," (2) "accorded an opportunity to respond to said charges," and (3) "given a written statement from the factfinders of the evidence relied on and the reasons for the action taken," *Treacy*, 131 Misc. 2d at 851–52.

Here, the Amended Complaint alleges only that Plaintiff was required to attend a hearing before the TLC and that the agency dismissed the charges against him after reviewing evidence "including photos of [his] license plates." (Am. Compl., Dkt. 19, ¶¶ 32, 33.) The Amended Complaint thus suggests that the proceeding "was decided solely on the submission of papers and documents, [] no testimony was taken[,] and [] no witnesses were examined." *Tray Wrap*, 2008 WL 9453492, at *20. Plaintiff does not allege, for example, that he had "the right to present witnesses and to cross-examine the witnesses," *Biswas v. City of New York*, 973 F. Supp. 2d 504, 528 (S.D.N.Y. 2013), "representation by counsel," *Nazario v. State*, 884 N.Y.S.2d 580, 590 (N.Y. Ct. Cl. 2009) (quotations omitted), *aff'd*, 905 N.Y.S.2d 328 (N.Y. App. Div. 2010), or that "[i]f he had not appeared[,] it could have resulted in his arrest and imprisonment," *Glenn v. State*, 543 N.Y.S.2d 632, 634 (N.Y. Ct. Cl. 1989) (citations omitted). Although Plaintiff's Response to Defendants' motion to dismiss alludes to "endurance of a trial" (Pl's. Resp., Dkt. 27, at 3), it provides no details suggesting the TLC proceedings "contain[ed] sufficient attributes of a judicial proceeding" to sustain a malicious prosecution claim, *Scollar*, 74 N.Y.S.3d at 180 n.9.

Second, Plaintiff's Section 1983 malicious prosecution claim fails for the additional reason that he has not alleged that the administrative hearing resulted in "a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment." *Lanning*, 908 F.3d at 24 (citation, quotations, and brackets omitted). Plaintiff argues that "his required appearance at the administrative quasi-judicial proceeding along with the

endurance of a trial constituted a restraint of his liberty sufficient to constitute a seizure." (Pl's. Resp., Dkt. 27, at 3.) But, with respect to the TLC proceeding, Plaintiff was "never taken into custody, imprisoned, physically detained[,] or seized within the traditional meaning of the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (citation omitted).

Plaintiff also contends that *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997), and *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208 (2d Cir. 2000), "hold that the required Court appearance amounted to seizure within the purview of the Fourth Amendment." (Pl's. Resp., Dkt. 27, at 3.) To the extent this argument references Plaintiff's "arraignment in Queens County Criminal Court" (Am. Compl., Dkt. 19, ¶ 31), it deviates from the malicious prosecution claim in the Amended Complaint, which involves only the "*administrative* proceedings against [P]laintiff before the [TLC]" (*id.* ¶ 66 (emphasis added); *see also id.* ¶ 71). Further, "[f]ailure to adequately allege a *post*-arraignment deprivation of liberty results in the dismissal of a Section 1983 malicious prosecution claim." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 263 (E.D.N.Y. 2015) (emphasis added) (citation omitted).

Finally, Plaintiff's Queens Supreme court appearance resulted in an ACD, which "this Court, like many, has found in the context of malicious prosecution claims . . . is not a favorable termination." *Ross v. City of New York*, No. 17-CV-3505 (PKC) (SMG), 2019 WL 4805147, at *8 (E.D.N.Y. Sept. 30, 2019) (citation and quotations omitted); *see also Smalls v. Collins*, ---F.4th---, 2021 WL 3700194, at *16 (2d Cir. Aug. 20, 2021) ("[A]cceptance of an ACD bars a malicious-prosecution claim because it leaves the question of innocence or guilt unanswered and is thus not a termination indicative of innocence." (citations omitted)). Thus, even if Plaintiff had alleged malicious prosecution in the context of his criminal proceedings—which he has not—

he cannot show that those proceedings terminated in his favor.  Plaintiff's malicious prosecution claims are therefore dismissed.

## B. Fabrication of Evidence

Defendants move to dismiss Plaintiff's fabricated evidence claim on the grounds that "there was no favorable termination as [P]laintiff ultimately accepted an ACD," and "[P]laintiff did not suffer any post-arraignment deprivation of liberty."  (Defs.' Mot., Dkt. 24-2, at 10 (citations omitted).)

### 1.  Legal Standard

"To succeed on a fabricated-evidence claim, a plaintiff must establish that [] (1) [an] investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff [suffered] a deprivation of life, liberty, or property as a result."  *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021) (citation, quotations, and brackets omitted).  "The plaintiff need not have been tried to make out this claim so long as some deprivation of liberty occurred."  *Id.* (citation omitted).

In *McDonough v. Smith*, 139 S. Ct. 2149, 2156–57 (2019), the Supreme Court held that a claimant "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution."  The Court derived the favorable termination requirement from "the most analogous common-law tort," malicious prosecution.  *Id.* at 2156 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).  Recently, the Second Circuit clarified that, in the context of fabricated evidence claims, "[t]he dismissal of [a plaintiff's] charges pursuant to an ACD [] constitute[s] a favorable termination within the meaning of *McDonough* and *McDonough* poses no bar to suit."  *Smalls*, 2021 WL 3700194, at *17.  Thus, a plaintiff's fabricated evidence "claim accrues (and may be brought) once her charges are conclusively dismissed pursuant to an ACD."

12

*Id.* A plaintiff also "may assert a fabricated-evidence claim related to his pretrial detention under the Due Process Clause." *Id.* at *15.

### 1.   Plaintiff's Fabricated Evidence Claim May Proceed

Plaintiff asserts that "[D]efendants concocted and fabricated false evidence and information including false police reports and [a] false Criminal Court Complaint, and forwarded false information and evidence to the Queens District Attorney's officer that was likely to influence a jury to find [P]laintiff guilty of the false concocted charge." (Am. Compl., Dkt. 19, ¶ 62.) Plaintiff specifies that "the Criminal Complaint . . . by [D]efendant [Merino] alleged that he observed a padded covering placed over the front license plate of [P]laintiff's vehicle," and that "Defendant [White] [said] that . . . the rear license plate of [P]laintiff's vehicle [was] covered with a plastic covering in violation of New York Vehicle and Traffic Law §402-1(v)." (*Id.* ¶ 29.) Plaintiff alleges that "[D]efendants knew . . . that such charges were completely false." (*Id.* ¶ 30.)[6]

At this stage, Defendants do not dispute Plaintiff's allegation that "an investigative officer fabricated information likely to influence a jury and forwarded that information to the prosecution." *Ashley*, 992 F.3d at 138.[7] Rather, they contend that "there was no favorable termination as plaintiff ultimately accepted an ACD," and that "[P]laintiff did not suffer any post-arraignment deprivation of liberty." (Defs.' Mot., at ECF 16.)

As noted, the Second Circuit recently clarified that a fabricated evidence "claim accrues (and may be brought) once [the plaintiff's] charges are conclusively dismissed pursuant to an

---

[6] Unlike his malicious prosecution claim, which involves the "administrative proceedings against [P]laintiff before the [TLC]" (Am. Compl., Dkt. 19, ¶ 66), Plaintiff's fabricated evidence claim appears to concern the criminal proceedings.

[7] The Court notes that it is required to accept the non-conclusory factual allegations in a complaint at this stage of the case. *See Forest Park Pictures*, 683 F.3d at 429.

ACD." *Smalls*, 2021 WL 3700194, at *16.  The Court therefore rejects Defendants' argument.

The Second Circuit also confirmed in *Smalls* that a plaintiff "may assert a fabricated-evidence

claim related to his pretrial detention under the Due Process Clause." *Id.* at *15.  Courts in this

Circuit, including this Court, also have allowed fabricated evidence claims to proceed based on

*pre-arraignment* detentions.  *See, e.g.*, *John v. Lewis*, No. 15-CV-5346 (PKC), 2017 WL 1208428,

at *18 (E.D.N.Y. Mar. 31, 2017) (declining to dismiss a fabricated evidence claim because the

defendant "included . . . false information in the criminal court complaint and police reports[,]

and . . . the arrest caused [the plaintiff] not to be arraigned until almost twenty four (24) hours

later" (quotations and brackets omitted)); *Ross*, 2019 WL 4805147, at *9 (denying summary

judgment because "the jury could find that the decision to hold Plaintiff until her arraignment two

days later was influenced by [the defendant's] allegations"); *Long v. New York City*, No. 14-CV-

9908 (VEC), 2016 WL 4203545, at *5 (S.D.N.Y. Aug. 8, 2016) (allowing a claim to proceed where

the plaintiff claimed that "the allegedly false information included in her arrest report and criminal

complaint was the basis for her being detained [overnight] pending arraignment"); *Corso v. City

of New York*, No. 17 CIV. 6096 (NRB), 2018 WL 4538899, at *9 n.17 (S.D.N.Y. Sept. 20, 2018)

(noting that the plaintiff's "detention at the precinct following his arrest [was] a deprivation of

liberty").

Plaintiff's fabrication of evidence claim therefore may proceed.

### C.  State Law Notice of Claim

Defendants move to dismiss Plaintiff's negligence and invasion of privacy/trespass claims

on the basis that the Notice of Claim he filed with the City provided inadequate notice.  (Defs.'

Mot., Dkt. 24-2, at 11.)

1.  Legal Standard

"Under New York law, a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas*, 816 F.3d at 226–27 (citing *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)); *see also* N.Y. Gen. Mun. Law § 50-e. "These provisions apply to state law claims even when they are brought in federal court." *Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018) (summary order) (citing *Hardy*, 164 F.3d at 793). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 794 (citations omitted); *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002) (dismissing pendant state law claims because the plaintiff "never filed a notice of claim").[8]

"The purpose of a notice of claim is to allow the municipality to investigate complaints adequately." *Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 468 (E.D.N.Y. 2013)

---

[8] *See e.g.*, *Scott v. City of New York*, 836 N.Y.S.2d 140, 140 (N.Y. App. Div. 2007) (dismissing false arrest and malicious prosecution claims because the "plaintiff's notice of claim was limited to allegations of assaultive conduct by police officers and their use of excessive force, and did not include allegations, either expressed or implied, supporting newly raised causes of action for false arrest and malicious prosecution"); *Garcia v. O'Keefe*, 825 N.Y.S.2d 38, 38 (N.Y. App. Div. 2006) (dismissing a claim that was "not listed as [a] theory of liability in plaintiff's notice of claim and could not be inferred from plaintiff's general assertions, or from her other claims"); *Mahase v. Manhattan & Bronx Surface Transit Operating Auth.*, 771 N.Y.S.2d 99, 100 (N.Y. App. Div. 2004) (dismissing a claim that the transit authority breached a duty to provide a safe entrance to a vehicle, because the notice of claim "relied on the theory that the public sidewalk and/or curb near the bus stop was defective and/or poorly maintained, liability for which generally lies with" the city); *Barksdale v. N.Y.C. Transit Auth.*, 741 N.Y.S.2d 697, 698 (N.Y. App. Div. 2002) (dismissing a claim for design defect in "the gates or other devises between subway cars" because the notice of claim "set forth a theory of liability based on . . . improperly maintained safety chains"); *Mojica v. N.Y.C. Transit Auth.*, 498 N.Y.S.2d 448, 449 (N.Y. App. Div. 1986) (dismissing false arrest, false imprisonment, and malicious prosecution claims because "[t]he information contained in the notice of claim merely alerted the defendant Transit Authority to the fact that the plaintiff was physically injured during an altercation with one of its police officers" and not "that the plaintiff was detained and arrested or that criminal proceedings were subsequently instituted against him").

(quotations omitted).  Thus, "[a]lthough the notice must set forth 'the nature of the claim,'" "it need not 'state a precise cause of action in haec verba.'"  *Rentas*, 816 F.3d at 227 (first quoting N.Y. Gen. Mun. Law § 50–e; and then quoting *DeLeonibus v. Scognamillo*, 583 N.Y.S.2d 285, 286 (N.Y. App. Div. 1992)).  "The test of the sufficiency of a Notice of Claim is merely whether it includes information sufficient to enable the city to investigate."  *Brown v. City of New York*, 740 N.E.2d 1078, 1080 (N.Y. 2000) (citation and quotations omitted).  A Notice of Claim therefore may be sufficient even when it fails to state a precise cause of action, "as long as the details pertaining to such a claim are described sufficiently with respect to time, place and manner to enable the city to investigate the claims."  *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 193 (S.D.N.Y. 2001) (quotations omitted) (allowing an emotional distress claim to proceed because, "[a]lthough intentional infliction of emotional distress may not have been specified initially by [the plaintiff] as a claim, the City Defendants learned of the events underlying the claims through notice of [the plaintiff's] various retaliation and discrimination charges"), *aff'd*, 48 F. App'x 363 (2d Cir. 2002)).[9]

## 2. Plaintiff's Notice of Claim Was Sufficient as to His Negligence and Invasion of Privacy/Trespass Claims

In his Notice of Claim, Plaintiff described "[t]he nature of the claim" as "[f]alse arrest; excessive use of force; violation of constitutional rights; fabrication of evidence; violation of due

---

[9] *See also Miller v. City of New York*, 933 N.Y.S.2d 36, 37 (N.Y. App. Div. 2011) (allowing tortious interference claim to proceed, where the notice of claim did not use the words "tortious interference with contract," because "a notice of claim does not have to set forth a precise legal theory of recovery"); *DeLeonibus*, 583 N.Y.S.2d at 286 ("The Legislature did not intend that the claimant have the additional burden of pleading causes of action and legal theories, proper for the pleadings, in the notice of claim[.]").

process rights; assault & battery." (Defs.' Mot., Dkt. 24-2, at ECF 21.)[10]  He listed "[t]he time

when, the place where[,] and the manner in which the claim arose" as follows:

> On or about July 9, 2019 shortly after 7:00 A.M. at terminal C LaGuardia Airport
> (Queen[s], N.Y.) departures, employees of the [TLC] in the scope of their
> employment falsely arrested claimant and charged him with violation of V.T.L.
> §402.1, arrested and imprisoned him & subjected him to assault and excessive
> physical force.

(*Id.*)  He alleged that he "sustained physical injuries; loss of liberty; mental anguish; humiliation;

pain and suffering; [and] loss of income."  (*Id.*)

Although Plaintiff's Notice of Claim did not precisely allege negligence or invasion of

privacy/trespass, it described "the details pertaining to [these claims] sufficiently with respect to

time, place and manner to enable the city to investigate the claims."  *Gonzalez*, 147 F. Supp. 2d at

193 (quotations omitted).  Plaintiff's Notice of Claim listed the date, time, and place of his alleged

injuries, and asserted that Defendants "subjected him to assault and excessive physical force."

(Defs.' Mot., Dkt. 24-2, at ECF 21.)  These allegations gave the City the information necessary to

investigate whether Defendants negligently caused Plaintiff physical injury or trespassed on his

person in the course of arresting him on "July 9, 2019 shortly after 7:00 A.M. at terminal C

LaGuardia Airport."  (Defs.' Mot., Dkt. 24, at ECF 21.)

Defendants rely on *Scott v. City of New York*, 836 N.Y.S.2d 140, 140 (N.Y. App. Div.

2007), *Garcia v. O'Keefe*, 825 N.Y.S.2d 38, 38 (N.Y. App. Div. 2006), *Mahase v. Manhattan &*

---

[10] Defendants have attached to their motion the Notice of Claim that Plaintiff filed with the
Comptroller of the City of New York (Defs.' Mot., Dkt. 24-2, at ECF 21–22), of which the Court
takes judicial notice.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that court
may take judicial notice of public records integral to the complaint but not attached to it, so long
as the court does not use such records to establish the truth of the matter asserted therein); *see also
Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (finding a document "incorporated into the pleading
because" it "was integral to [the plaintiff's] ability to pursue" the cause of action); *Rentas*, 816
F.3d at 226–27 (noting that "[u]nder New York law, a plaintiff must file a notice of claim before
suing municipal defendants in a personal injury action").

*Bronx Surface Transit Operating Auth.*, 771 N.Y.S.2d 99, 100 (N.Y. App. Div. 2004), and *Barksdale v. New York City Transit Auth.*, 741 N.Y.S.2d 697, 698 (N.Y. App. Div. 2002), to argue that "all theories of liability must be expressly articulated in the Notice of Claim." (Defs.' Mot., Dkt. 24-2, at ECF 17.) But, as previously noted, "[t]he Legislature did not intend that the claimant have the additional burden of pleading causes of action and legal theories, proper for the pleadings, in the notice of claim[.]" *DeLeonibus*, 583 N.Y.S.2d at 286. In *Scott*, therefore, the court dismissed the complaint because the Notice of Claim "did not include allegations, either expressed *or implied*, supporting [the plaintiff's] newly raised causes of action." 836 N.Y.S.2d at 140 (emphasis added). Although the complaint in *Scott* raised "causes of action for false arrest and malicious prosecution, . . . the factual allegations in the notice of claim [did] not even mention the fact that plaintiff was subjected to arrest and prosecution." *Id.* Likewise, in *Garcia*, the court found the plaintiff's notice of claim insufficient because the complaint's false arrest theory "could not be *inferred* from plaintiff's general assertions, or from her other claims" of "negligence, carelessness and recklessness, . . . wrongful death[,] and assault and battery." 825 N.Y.S.2d at 38 (emphasis added).

Here, Plaintiff's Notice of Claim alleged that Defendants physically harmed him. Defendants thus had notice that Plaintiff intended to sue for resulting injuries. That Plaintiff might ultimately allege negligence and invasion of privacy/trespass, in addition to excessive force, "could be inferred" from his Notice of Claim, *see id.*, even though the Notice of Claim "did not use the words" "negligence" or "trespass," *see DeLeonibus*, 583 N.Y.S.2d at 286. This case thus differs from *Scott* and *Garcia*, where the complaints alleged false arrest despite the plaintiffs' failures to include facts or claims from which this theory of liability could be inferred in their notices of claim.

Neither *Mahase* nor *Barksdale* compel a different conclusion.  In *Mahase*, the plaintiff's notice of claim relied on a theory under which the *City* would be liable, but her complaint relied on a theory under which the *Transit Authority*, a different entity, would be liable.  771 N.Y.S.2d at 100.  In *Barksdale*, the complaint alleged a design defect in "the gates or other devices between subway cars," but the notice of claim "set forth a theory of liability based on . . . improperly maintained safety chains," 741 N.Y.S.2d at 698, thus implicating the distinct events of design and maintenance.

Here, by contrast, Plaintiff's Notice of Claim and Amended Complaint both implicate the same defendants and turn on the same events.  Both suggest that the physical force Defendants used while arresting Plaintiff caused him injury.  The Amended Complaint and Notice of Claim do not, like the documents in *Mahase* and *Barksdale*, differ as to the source of the alleged injuries and the entities responsible.  Whether Plaintiff's alleged injuries stemmed from intentional excessive force, negligence, or unlawful invasion of Plaintiff's privacy, the City had the requisite notice of the underlying facts.

**D. Negligence**

Defendants move to dismiss Plaintiff's Negligence claim on the grounds that it is inconsistent with the factual allegations in the Amended Complaint.

1. <u>Legal Standard</u>

"To show negligence under New York law, a plaintiff must demonstrate (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result."  *Ferreira v. City of Binghamton*, 975 F.3d 255, 266 (2d Cir. 2020) (quotations omitted).  "[U]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."  *Watson v. United*

*States*, 865 F.3d 123, 134 (2d Cir. 2017) (quotations omitted).  "To the extent that a claim for negligence . . . is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution." *Dollard v. City of New York*, 408 F. Supp. 3d 231, 238–39 (E.D.N.Y. 2019).

Still, "a plaintiff may plead excessive force and negligence in the alternative" unless "the conduct alleged, if true, may only give rise to liability for an intentional act." *Pateman v. City of White Plains*, No. 17-CV-6156 (KMK), 2020 WL 1497054, at *24 (S.D.N.Y. Mar. 25, 2020) (quotations omitted).  Thus, if "a reasonable juror could find that" the plaintiff's injury "could have [resulted from] negligen[ce], rather than intentional [conduct], and [the plaintiff] has not alleged any facts to the contrary," the negligence and excessive force claims can both survive a motion to dismiss.  *Id.*[11]

2.  Plaintiff's Negligence Claim May Proceed

Plaintiff has sufficiently pled negligence.  The Amended Complaint asserts that Defendants White and Merino "forcefully shoved [P]laintiff into a vehicle and caused [him] to strike his head on said vehicle while [P]laintiff was in the exclusive physical control of [Defendants]."  (Am. Compl., Dkt. 19, ¶ 22.)  This supports the theory that "[D]efendant[s] owed [Plaintiff] a cognizable duty of care . . . breached that duty[,] and [that Plaintiff] suffered damage as a proximate result." *Ferreira*, 975 F.3d at 266 (quotations omitted).

---

[11] *See also Jones v. Howard*, No. 615-cv-902 (GLS) (TWD), 2018 WL 3432713, at *5 (N.D.N.Y. July 16, 2018) ("[C]ontrolling authority of the New York State Court of Appeals permits negligence claims against a police officer in the context of intentional conduct."); *Vilkhu v. City of New York*, No. 06-CV-2095 (CPS) (JO), 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008) (dismissing a negligence claim because the plaintiff alleged "a single set of facts which if proved c[ould] only provide the basis for one or more intentional torts"); *Rizk v. City of New York*, 462 F. Supp. 3d 203, 229 (E.D.N.Y. 2020) (granting summary judgment as to a negligence claim because "there [wa]s no view of the evidence that would permit a finding of negligence").

Defendants argue that "[P]laintiff's negligence claims fail" because he "must resort to traditional remedies of false imprisonment and malicious prosecution." (Defs.' Mot., Dkt. 24-2, at ECF 18 (quotations omitted).) But Plaintiff does not allege negligence on the basis that he "would not have been arrested or prosecuted if defendants had been more careful." *Jenkins v. City of New York*, No. 91-CV-3539 (RLC), 1992 WL 147647, at *8 (S.D.N.Y. June 15, 1992). Rather, he claims Defendants "negligently caused [him] physical injury" *during* the arrest, not that they were negligent *for* arresting or charging him (Am. Compl., Dkt. 19, ¶ 58; *see also* Pl.'s Resp., Dkt. 27, at ECF 9 ("Plaintiff is not claiming that his arrest was the result of negligence, but rather that the physical injury to his head as he was shoved into the vehicle could possibly have been by negligence rather than intentional conduct.").)[12]

Defendants also contend that "all along [P]laintiff has purported his alleged head injury as being caused by an intentional act of the defendants." (Defs.' Reply, Dkt. 25, at ECF 13.) They essentially argue that Plaintiff's excessive force claim precludes his negligence claim because the two are inconsistent.

But the Amended Complaint alleges only that Defendants "forcefully shoved [P]laintiff into a vehicle and caused [him] to strike his head on said vehicle." (Am. Compl., Dkt. 19, ¶ 22.) As Plaintiff notes in his Response to Defendants' Motion to Dismiss, he may be entitled to recover under a negligence theory, as an alternative to his excessive force theory, "should [it] appear that the injury to [his] head . . . was not the result of intentional conduct." (Pl.'s Resp., Dkt. 27, at ECF 9.) Plaintiff therefore "may plead excessive force and negligence in the alternative" because "a

---

[12] The Court rejects Defendants' assertion that the negligence claim in the Amended Complaint is "based on [Plaintiff's] arrest and prosecution" rather than "the head injury he allegedly received." (Defs.' Reply, Dkt. 25, at ECF 13.) As explained, the Amended Complaint alleges Defendants "caused plaintiff to strike his head" on the car (Am. Compl., Dkt. 19, ¶ 22), and "negligently caused [him] physical injury" (*id.* ¶ 58).

reasonable juror could find that" his injury "could have [resulted from] negligen[ce], rather than intentional [conduct], and [he] has not alleged any facts to the contrary." *Pateman*, 2020 WL 1497054, at *24 (quotations omitted).[13]  Plaintiff thus has stated a claim for negligence.[14]

## CONCLUSION

The motion to dismiss is granted in part and denied in part.  Plaintiff's malicious prosecution claims in the Amended Complaint are dismissed.  Plaintiff may proceed with his remaining claims.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 15, 2021
         Brooklyn, New York

---

[13] Defendants also suggest Plaintiff failed to provide proper notice of his negligence claim under New York law because he filed a "notice of claim where a negligence claim is not even mentioned." (Defs.' Reply, Dkt. 25, at ECF 13.)  But, as explained, Plaintiff's Notice of Claim provided Defendants with sufficient information to investigate the source of his alleged head injury.

[14] The Court notes that Defendants' motion does not seek dismissal for failure to state a claim of Plaintiff's state law claim for invasion of privacy/trespass, and the Court declines to *sua sponte* consider dismissing that claim, especially given that it is based on the same alleged facts that support Defendants' other claims.  *See United States v. Bacchus*, 137 F.Supp.3d 214, 241–42 (E.D.N.Y. 2015) (declining to dismiss certain of the plaintiff's claims where they were based on the same evidence as a claim that was proceeding) (citing *Thibodeaux v. Travco Ins. Co.*, 13-CV-5599, 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted.")); *see also Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943) ("There seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue.") (quotations omitted)).