UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN KARLYG,

                      Plaintiff,

        -against-                               **ORDER**
                                        20 CV 991 (PKC) (CLP)

CITY OF NEW YORK, *et al.*,

                      Defendants.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

       On February 24, 2020, plaintiff John Karlyg commenced this action against the City of New York and several Taxi and Limousine Commission ("TLC") enforcement officers, asserting claims arising out of his arrest on July 9, 2019, which took place while he was working as a Lyft driver. (ECF No. 1). On May 6, 2022, plaintiff filed his Second Amended Complaint, which alleges false arrest, excessive use of force, fabrication of evidence, and related tort and civil rights claims in connection with the arrest. (Sec. Am. Compl.[1]).

       Currently pending before this Court is defendants' Motion for Spoliation Sanctions Pursuant to Fed. R. Civ. P. 37(e). (Defs.' Mot.[2]). For the reasons set forth below, defendants' motion for sanctions is denied.

## BACKGROUND

       Plaintiff alleges that on July 9, 2019, an undercover TLC officer, defendant White, harassed him and asked for his license and registration; plaintiff then started taking photographs of defendant White and the other co-defendants, at which point defendant White "struck the

---

[1] Citations to "Sec. Am. Compl." refer to plaintiff's Second Amended Complaint, filed on May 6, 2022 (ECF No. 38).
[2] Citations to "Defs.' Mot." refer to defendants' Memorandum of Law in Support of Motion for Spoliation Sanctions Pursuant to Fed. R. Civ. P. 37(e), filed on December 2, 2023 (ECF No. 53).

1

phone out of plaintiff's hand and proceeded to forcefully arrest the plaintiff." (Pl.'s Opp.[3] at 1). In discovery, plaintiff produced, by email in PDF format, six photographs of the defendants from the incident – the only photographs at issue here. (Defs.' Mot. at 1-2; Pl.'s 11/6/20 Discovery Responses[4] at 6-12). The photographs plaintiff produced allegedly depict the defendants standing at the scene shortly before they arrested plaintiff; that is, they "aided in identifying the participants" but do not depict the defendants "engaging in any of the conduct [of which] the plaintiff complained." (Pl.'s Opp. at 4). Defendants contend that the photographs may have been "taken later and/or saved as screenshots sometime after plaintiff's July 9, 2019 arrest." (Defs.' Mot. at 3). If the photographs were screenshots, defendants argue, that would indicate that plaintiff recorded a video during the incident and "later deleted it, saving only screenshots from the video." (Id. at 3-4).

In addition, plaintiff took three photographs of his license plates that he claims he took a week after the incident to defend against charges brought by the TLC that plaintiff was arrested for having covers over his license plates. (Defs.' Mot. at 1; Pl.'s Opp. at 1-2). Plaintiff testified at his September 2021 deposition that he could not remember if he took any other photographs on the day in question, but that he did not record any videos. (Defs.' Mot at 2 (citing Pl.'s 9/9/21 Dep.[5] at 57-58, 107)). When questioned at his deposition about a license plate picture where the N in New York was partially covered, plaintiff stated that there existed "originals and you can see everything" on the license plate in the originals. (Pl.'s 9/9/21 Dep. at 111).

Defendants then requested "any additional photographs that had not already been

---

[3] Citations to "Pl.'s Opp." refer to plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(e), filed on January 31, 2024 (ECF No. 56).

[4] Citations to "Pl.'s 11/6/20 Discovery Responses" refer to the copy of plaintiff's responses to defendants' first set of interrogatories and document production requests, provided as an exhibit to defendants' Memorandum (ECF No. 54-1).

[5] Citations to "Pl.'s 9/9/21 Dep." refer to the excerpts of the transcript of plaintiff's deposition taken on September 9, 2021, provided as an exhibit to defendants' Memorandum (ECF No. 54-2).

2

produced and the 'originals' of photographs that plaintiff claimed were different than the photographs that were previously produced," as well as any video recordings. (Defs.' Mot. at 2). In response, plaintiff produced only one "'Full license plate photo'" that had not been previously produced. (Id. at 3). He did not produce any additional photographs taken the day of the incident. (Id.)

A year after plaintiff's deposition, in September 2022, defendants requested the native files of all produced photographs. (Id.) Plaintiff's counsel responded by agreeing to an inspection of plaintiff's cell phone. (Id.) On February 9, 2023, defendants inspected plaintiff's cell phone, but no photographs or videos existed on the phone from prior to June 29, 2020.[6] (Id. at 4).

Defendants conducted a second deposition of plaintiff on April 3, 2023, and inquired about the lack of photographs from 2019. (Pl.'s 4/3/23 Dep.[7] at 9-10). Plaintiff stated that he did not delete the photographs and was not sure what happened to them, but that they may have been lost or removed by the phone company after a period of years. (Id. at 13). Plaintiff also stated that he believed he sent photographs to his attorney through email. (Id. at 18-19). Defendants requested the emails be produced, and plaintiff produced five emails that included the three photographs of the license plates and two screenshots from the Lyft app. (Defs.' Mot. at 4-5). Plaintiff did not find any email to his counsel with the six previously produced photographs of the defendants. (Id. at 5).

Defendants argue that plaintiff intentionally destroyed relevant electronically stored information ("ESI") by deleting certain images from his cell phone. (Id. at 7). Specifically,

---

[6] Contrary to defendants' assertion, plaintiff's Memorandum cites the date from which all photos and videos were wiped from his phone as February 2020. (Pl.'s Opp. at 2).
[7] Citations to "Pl.'s 4/3/23 Dep." refer to the copy of the transcript of plaintiff's deposition taken on April 3, 2023, provided as an exhibit to plaintiff's Memorandum (ECF No. 56).

3

defendants argue that plaintiff intentionally destroyed "the original, native versions along with metadata for the [six] images he produced depicting the defendants during the incident at issue in this case." (Id.)  Therefore, without the metadata, defendants cannot test whether the photographs were taken during the incident, or were screenshots taken from a video of the incident. (Id. at 3).  Defendants submit that this warrants spoliation sanctions, specifically "(1) dismissal of his false arrest and fabrication of evidence claims; (2) a permissive adverse inference instruction and an opportunity to cross examine plaintiff on the destruction of evidence, if any of plaintiff's claims proceed to trial; and (3) reasonable attorneys' fees incurred in connection with plaintiff's spoliation of evidence." (Id. at 11).

## DISCUSSION

I. Legal Standard

Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

4

Fed. R. Civ. P. 37(e).  The threshold requirements for Rule 37(e) are as follows: "(1) that relevant ESI existed; (2) that the ESI should have been preserved in anticipation of litigation; (3) that the allegedly spoliating party did not take reasonable steps to preserve the ESI; and (4) that the ESI cannot be entirely restored or replaced."  Castro v. Smith, No. 16 CV 8147, 2023 WL 5371311, at *7 (S.D.N.Y. Aug. 22, 2023) (citations omitted).

Under subsection (e)(1), there must be a finding of prejudice, the analysis of which "necessarily includes an evaluation of the information's importance in the litigation."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  The rule "does not place a burden of proving or disproving prejudice on one party or the other."  Id.  "It is sufficient if the existing evidence plausibly 'suggests' that the spoliated ESI could support the moving party's case."  Karsch v. Blink Health Ltd., No. 17 CV 3880, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (quoting Coan v. Dunne, 602 B.R. 429, 440 (D. Conn. 2019)).

Subsection (e)(2) requires an "intent to deprive," but not a finding of prejudice, since the existence of intent supports the "inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  "Whether the spoliator *affirmatively* destroys the data, or *passively* allows it to be lost, is irrelevant; it is the spoliator's state of mind that logically supports the adverse inference."  Ungar v. City of New York, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), aff'd, No. 21 CV 1384, 2022 WL 10219749 (2d Cir. Oct. 18, 2022).

II. The Parties' Submissions

Defendants argue that plaintiff failed in his duty to preserve the original photographs of defendants, and the metadata therein "cannot be obtained through alternative means."  (Defs.' Mot. at 5, 7-8).  Defendants further argue that this failure to preserve ESI is prejudicial because

5

defendants are "unable to test whether or not the photographs were created contemporaneously with the incident . . . or whether they were created from a video of the incident." (Id. at 8). Defendants argue that whether or not a video was taken of the incident is relevant given that plaintiff claims the arresting officer created a false police report stating that plaintiff was recording an undercover officer and impeding her operation, as well as "'screaming and cursing in front of multiple passengers.'" (Id. at 9 (citing Sec. Am. Compl. ¶¶ 30-31)). Therefore, a video could confirm the arrest report that plaintiff was taking a video, screaming in front of passengers, and obstructing the officer from working, and thus allow defendants to argue against the false arrest claim. (See id.) Evidence of a video would also corroborate the testimony of defendant Hinds, the TLC enforcement officer who stated that plaintiff was filming her. (Id. at 9). Defendants contend that a video could also substantively defend against plaintiff's other allegations beyond the false arrest claim, but they do not provide further details. (Id.)

Defendants also argue that plaintiff acted with intent to deprive, citing the time frame of deleted content – all photographs prior to June 29, 2020, were wiped from his phone, which was three days before plaintiff served initial disclosures. (Id. at 9). Defendants also note that plaintiff has provided no plausible explanation for the loss of the images, and defendants assert that plaintiff selectively emailed his attorney only certain images. (Id. at 9-10).

In opposition, plaintiff argues that defendants have not established the elements of spoliation by a preponderance of the evidence. (Pl.'s Opp. at 4). Plaintiff states that defendants' "entire theory is based on the belief that the plaintiff was videotaping them rather than photographing them," which is "nothing but mere speculation without any evidence whatsoever." (Id.) According to plaintiff, defendants have "failed to prove that the only explanation for the absence of the photos on the plaintiff's phone years later was due to culpable

6

conduct," suggesting the photographs could have been automatically deleted based on storage settings since all photographs before a certain date were not present, not just the photographs of the incident. (Id. at 5). Plaintiff also argues that defendants have not explained how the native files or the purported video would support their defense, particularly since defendants "seized the plaintiff's phone before the alleged excessive use of force." (Id.) Lastly, plaintiff notes that defendants, who are accusing plaintiff of inadequately preserving evidence, failed to take any photographs of the allegedly violative license plates, likely because the plates complied with the law. (Id. at 6).

In Reply, defendants argue that plaintiff does not dispute that he failed to preserve the native photographs and that they cannot be replaced. (Defs.' Reply[8] at 2). Defendants argue that the loss of the native photographs prejudices them because without the metadata to indicate the date and time that the images were created, defendants have lost the opportunity to "independently determine whether the images of defendants were screenshots created from a video, as defendants suspect, or were created contemporaneously with the event, as plaintiff alleges." (Id. at 3). Furthermore, defendants argue that they have demonstrated through circumstantial evidence that plaintiff acted with "intent to deprive" and "plaintiff has failed to put forward a factually-supported explanation of what happened" to the lost photographs. (Id. at 5-6). Defendants also suggest that it is unlikely the photographs were deleted as part of the phone's automatic deletion settings. During the inspection, plaintiff's photographs went back 2 years, 7 months, and 11 days, but defendants contend if they were set for automatic deletion, they should be deleting on a "prescheduled" time frame, such as 1 year or 30 days. (Id. at 5).

---

[8] Citations to "Defs.' Reply" refer to defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Spoliation Sanctions Pursuant to Fed. R. Civ. P. 37(e), filed on February 21, 2024 (ECF No. 58).

III. Analysis

    A. Threshold Requirements

First, the Court considers whether the threshold requirements for Rule 37(e) are met: "(1) that relevant ESI existed; (2) that the ESI should have been preserved in anticipation of litigation; (3) that the allegedly spoliating party did not take reasonable steps to preserve the ESI; and (4) that the ESI cannot be entirely restored or replaced." Castro v. Smith, 2023 WL 5371311, at *7.

As for the first element of the threshold requirements, the original or native photographs and their attached metadata are the relevant ESI that clearly existed at some point. It is also clear that the fourth element of the threshold requirements – that the metadata cannot be restored or replaced – has also been satisfied. Thus, the question is whether the metadata should have been preserved and whether plaintiff failed to take reasonable steps to preserve it.

    1. Legal Standard

As for the preservation requirement, a party's obligation to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Federal Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001). Specifically, a party has a duty to "preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15 CV 9363, 2018 WL 1512055, at *10 (S.D.N.Y. Mar. 12, 2018) (quoting Arista Records LLC v. Usenet.com, 608 F. Supp. 2d 409, 433 (S.D.N.Y. 2009)) (further citations omitted). Counsel has "a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." Chan v. Triple 8 Palace, Inc., No. 03 CV 6048,

8

2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005) (quoting Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 73 (S.D.N.Y. 1991)).

Once the obligation to preserve attaches, a party must take "reasonable steps" to preserve the evidence. Fed. R. Civ. P. 37(e). This requirement imposes "roughly a negligence standard" on the preserving party. Leidig v. Buzzfeed, Inc., 16 CV 532, 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017) (citing Federal Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n. v. Nomura Holding Am., Inc., 873 F.3d 85, 129 (2d Cir. 2017) (holding that "negligence, broadly speaking, is conduct that falls below the standard of what a reasonably prudent person would do under similar circumstances")). Courts have held in the context of a corporation's duty to preserve that taking reasonable steps to preserve ESI includes suspending any "routine document retention/destruction policy and put[ting] in place a 'litigation hold' to ensure the preservation of relevant documents." Charlestown Capital Advisors, LLC v. Acero Junction, Inc., 337 F.R.D. 47, 61 (S.D.N.Y. 2020) (quoting Lokai Holdings LLC v. Twin Tiger USA LLC, 2018 WL 1512055, at *11) (further citations omitted).

However, the advisory committee's notes to the 2015 amendment of Rule 37(e) emphasize that courts should "be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts." See also Capricorn Mgmt. Sys., Inc. v. Government Emps. Ins. Co., No. 15 CV 2926, 2019 WL 5694256, at *10 (E.D.N.Y. July 22, 2019) (holding that a "small, family-owned and operated business that . . . had never been involved in a major civil litigation" should not be held to the same standard as a large corporation (citing Lokai Holdings LLC v. Twin Tiger USA LLC, 2018 WL 1512055, at *11)), report and recommendation adopted, No. 15 CV 2926, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020). In particular, the advisory committee states that "individual litigants . . . may be less familiar with preservation

9

obligations," suggesting they are entitled to a less stringent standard than sophisticated corporations. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The notes further state that loss of ESI outside the party's control, such as a technical failure or the flooding of a computer room, does not invoke the rule. Id.

For purposes of production, a party "must retain all relevant documents (but not multiple identical copies)." Kosmidis v. Port Auth. of New York & New Jersey, No. 18 CV 8413, 2020 WL 5754605, at *9 (S.D.N.Y. Aug. 27, 2020) (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)), report and recommendation adopted, No. 18 CV 8413, 2020 WL 7022479 (S.D.N.Y. Nov. 30, 2020). When a discovery request does not specify a particular form in which ESI must be produced, the responding party should "produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms" and "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(ii)-(iii). Accordingly, courts regularly deny requests for production of metadata when the original evidence was already produced in a different form. Redcell Corp. v. A.J. Trucco, Inc., No. 20 CV 18, 2023 WL 8187843, at *2 (S.D.N.Y. Nov. 24, 2023) (quoting Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec., 255 F.R.D. 350, 357 (S.D.N.Y. 2008) (collecting cases)).

2. Analysis

Here, plaintiff produced PDFs of the photographs of the defendants but could not provide the attached metadata, because, as plaintiff testified, the metadata along with the original photographs were deleted from his cell phone, and he has not identified an alternative source for the original photographs. (Defs.' Mot. at 7-8).

Plaintiff reasonably knew that the six photographs of the defendants would be relevant to litigation, since he testified that he took the photographs of defendants "just in case I called the

police to show [the police] who they are." (Pl.'s 9/9/21 Dep. at 58). Therefore, under the Federal Rules, plaintiff had a duty to produce, and therefore preserve, the photographs "in a form or forms in which [they are] ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii)-(iii). Rule 34(b) arguably demands digital photographs should at least be preserved digitally, which plaintiff failed to do. See Tyson v. Department of Energy & Environmental Protection, No. 21 CV 736, 2022 WL 16949396, at *3 (D. Conn. Nov. 15, 2022) (holding that plaintiff had a duty to preserve photograph with metadata when he only produced a PDF). Plaintiff's counsel also should have informed his client of his duty to preserve and placed the photographs on a litigation hold to ensure they were not at risk for routine deletion. Plaintiff's counsel failed in his duty to explain to plaintiff the importance of placing a litigation hold on his photographs and ensuring plaintiff did so, as plaintiff testified that "nobody told me that" he was obligated to preserve all ESI. (Pl.'s 4/3/23 Dep. at 20).

Indeed, there is no evidence to suggest that plaintiff, an individual party with limited knowledge of electronic data storage and its use in litigation, knew or should have known that the metadata would be relevant to the litigation or even how to keep the photographs and their metadata in their original form. When plaintiff became aware that the incident could give rise to litigation, he did sufficiently preserve what he reasonably believed was the relevant evidence: the six photographs he took just before the incident that identify the defendants. Plaintiff testified that after the incident, he brought them to his attorney, although it is unclear whether he delivered the photographs by hand, by mail, or by email. (Pl.'s 4/3/23 Dep. at 15, 18; Pl.'s 9/9/21 Dep. at 108).

Plaintiff first produced the six photographs to defendants on November 6, 2020, in PDF format, without any objection from defendants. (See Defs.' Mot. at 1). Defendants did not

11

request the photographs' metadata until September 2022, almost two years after they first requested and apparently accepted production of the photographs. (Defs.' Mot. at 3). After accepting the photographs in PDF format, defendants were not entitled to demand them with the metadata attached two years later. See Redcell Corp. v. A.J. Trucco, Inc., 2023 WL 8187843, at *2 (noting that courts generally deny requests for metadata when "the producing party already has produced the documents in another form" (quoting Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec., 255 F.R.D. at 357 (collecting cases))). In addition, plaintiff testified as to his lack of knowledge regarding his phone's storage settings and capabilities, and his inability to explain the loss of all photographs and videos prior to a certain date. (Pl.'s 4/3/23 Dep. at 13). This could point to a technical failure or mishap, rather than an individual failure to reasonably preserve that would trigger Rule 37(e). See Rule 37(e) advisory committee's note to 2015 amendment.

Given that plaintiff, a Lyft driver, satisfied his discovery obligations by producing the original evidence, albeit in a different form, see Redcell Corp. v. A.J. Trucco, Inc., 2023 WL 8187843, at *2, and he does not appear to be sophisticated in the intricacies of preserving metadata, the Court holds him to a less stringent standard than what would normally be applied to a corporate litigant. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Moreover, even if plaintiff had a duty to preserve the metadata specifically, it is unclear whether the loss of the ESI was outside his control, seemingly occurring as a technical failure. See id. Although defendants argue that the alleged loss of the metadata was deliberate, given its close proximity in time to the production of plaintiff's initial disclosures, which occurred on July 2, 2020, it is clear that defendants made no requests for the metadata until two years later, and it is equally clear that not only did plaintiff lose the metadata for these photographs, he lost all of his

photographs prior to at least June 29, 2020.⁹  (See Defs.' Reply at 5).  Under all of these circumstances and given the sophistication of the plaintiff, the Court finds that the threshold requirements of Rule 37(e) have not been met.

      B. <u>Prejudice</u>

Even if the Court were to find that the threshold requirements of the Rule had been met, for spoliation sanctions to be imposed under subsection (e)(1), there must be a finding of prejudice, which "necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  The question before the Court is whether the evidence "plausibly 'suggests' that the spoliated ESI could support the moving party's case," in this instance by indicating that the photographs were screenshots from a video. <u>Karsch v. Blink Health Ltd.</u>, 2019 WL 2708125, at *21 (citing <u>Coan v. Dunne</u>, 602 B.R. at 440).  Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  The moving party need only demonstrate "plausible, concrete suggestions as to what [the destroyed] evidence might have been." <u>Karsch v. Blink Health Ltd.</u>, 2019 WL 2708125, at *21 (quoting <u>Moody v. CSX Transportation, Inc.</u>, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017)) (further citations omitted).  Rule 37(e) "leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Here, the evidence suggests that the spoliated ESI could support the defendants' case, but it could equally support plaintiff's case.  Defendants argue that they are prejudiced because without the metadata they are unable to test whether the photographs were created from a video

---

⁹ As noted above, plaintiff's Memorandum cites the date from which all photos and videos were wiped from his phone as February 2020, so the exact date is not entirely clear.  (Pl.'s Opp. at 2).

of the incident. (Defs.' Mot. at 8). As defendants explain, if the metadata were produced, it may show the photographs were in fact part of a video. This video could then support the defense against plaintiff's claim that the officer falsified the arrest report by claiming that he was filming defendants, obstructing the officer's operation, and screaming in front of passengers; it may also substantively support defendants' version of events. (Id. at 8-9).

However, the existence of a video is a matter of dispute. Plaintiff testified repeatedly that he did not take a video, since "[i]t happened so fast," and he only had time to pull out his phone and immediately begin taking photos. (Pl.'s 9/9/21 Dep. at 57-58; see also Pl.'s 4/3/23 Dep. at 25-27). Defendants do not identify the basis for their belief that plaintiff took a video of the incident, saying only that they "have long suspected" or "suspect" the video exists. (Defs.' Mot. at 8, 10; Defs.' Reply at 3). Defendants state that defendant Hinds testified plaintiff was taking a video, and the arrest report states only that he was "recording" an officer. (Defs.' Mot. at 9). However, given plaintiff testified he was taking photographs with both hands on his cell phone as he approached the officers (Pl.'s 9/9/21 Dep. at 58), this easily could be mistaken for taking a video; defendants do not suggest there is any reason a video's existence is more likely than the photographs' under these circumstances. Cases finding prejudice often point to circumstantial evidence that gives rise to an inference the spoliated evidence would help the movant's case. See, e.g., Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *10, *13 (holding plaintiffs' destruction of metadata was prejudicial when defendants produced a chart detailing inaccuracies in the documents produced, thereby showing plaintiffs plausibly manipulated the produced documents); Coan v. Dunne, 602 B.R. at 439 (holding that spoliated contents of email accounts plausibly showed defendant's contested ownership of a company when trustee produced evidence that defendant discussed the company in emails from the deleted account); Pugh-Ozua

14

v. Springhill Suites, No. 18 CV 1755, 2020 WL 6562376, at *4 (S.D.N.Y. Nov. 9, 2020) (declining to find prejudice when plaintiff provided no evidence that allegedly deleted texts and emails would have corroborated her claims).

Taken together, the present evidence suggests little more than "mere speculation" (Pl.'s Opp. at 4) that plaintiff took a video of the incident; alone, it is insufficient to show that the loss of metadata is prejudicial to defendants. Given that the Court finds that the threshold elements necessary under Rule 37(e) have not been met and, even if they had, prejudice has not been shown here, the Court declines to impose sanctions on plaintiff under Rule 37(e)(1).

    C.  Intent to Deprive

To the extent that defendants seek sanctions under Rule 37(e)(2), based on their assertion that plaintiff deliberately destroyed the ESI in order to deprive them of its use in the litigation, the Court notes that: "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *11. Courts in this Circuit have held that "given the severity of the sanctions available under Rule 37(e)(2), the requisite intent finding should be based on clear and convincing evidence." Lokai Holdings LLC v. Twin Tiger USA LLC, 2018 WL 1512055, at *1.

Although defendants argue that there is circumstantial evidence that supports an inference of intent to deprive, as discussed *supra*, there are other alternative explanations for the missing photographs. Plaintiff, or another individual with access to his phone, could have deleted the photographs by accident, or perhaps they were deleted due to lack of storage space or some other setting on his phone. Plaintiff testified that "I'm just a user of a phone. I don't know anything. I'm not a geek. I didn't delete anything. Everything was – is on my phone is – was

15

dear to me, my family, my kids since is he was born and everything [sic]. Everything is – is lost, maybe you find an answer and I can recoupe my family treasure." (Pl.'s 4/3/2024 Dep. at 13).

Based on all of the circumstances, the Court cannot find, based on clear and convincing evidence, that the plaintiff deliberately destroyed the ESI with "the intent to actually deprive another party of evidence." Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *11. Therefore, given that "the presented evidence is capable of more than one interpretation," and does not constitute clear and convincing evidence of an intent to deprive, Lokai Holdings LLC v. Twin Tiger USA LLC, 2018 WL 1512055, at *16, the Court finds that the requirements of Rule 37(e)(2) have not been met and that sanctions under that subsection are also inappropriate here.

## CONCLUSION

For the reasons stated above, the Court denies defendants' Motion for Spoliation Sanctions Pursuant to Fed. R. Civ. P. 37(e).

**SO ORDERED.**

Dated: September 28, 2024
        Brooklyn, New York

/s/ Cheryl L. Pollak
Cheryl L. Pollak, U.S. Magistrate Judge
Eastern District of New York